UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:26-cv-00908-WLH-ACCV | Date | March 5, 2026 |
|---|---|---|---|
| Title | *Ilya Petrovich Gutnik v. Pamela Bondi et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|
| Lesbith Castillo | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE SECOND EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [9]**

The Court is in receipt of Petitioner's Second Ex Parte Application for Temporary Restraining Order (the "Application"). (Application, Dkt. No. 9). For the reasons explained herein, the Court **GRANTS** the Application.

I.  **BACKGROUND**

  A.  **Factual Background**

Petitioner is a native and citizen of Ukraine. (Declaration of Maria Baldini-Potermin ("Potermin Decl.") ¶ 3). In 1993, Petitioner fled Ukraine "where he and his family endured grievous persecution for their Jewish faith." (*Id*. ¶ 4). Petitioner entered the United States and became a permanent resident. (*Id*.). Petitioner was convicted of several crimes and lost his permanent resident status. (Application at 2; *See also* Potermin Decl. ¶ 8). After serving his sentence in 2008, he was ordered removed. (Application at 2). Petitioner was released on an order of supervision ("OSUP"). (*See* Exhibit D).

Over 17 years since, he has regularly checked in with ICE, complied with his conditions of release, and committed no crimes. (Potermin Decl. ¶ 9; *See also*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Application at 2-3). On January 28, 2026, when he appeared for a routine scheduled ICE appointment, Petitioner was detained. (Potermin Decl. ¶ 11). That same day, Petitioner was provided a Notice of Revocation of Release revoking his OSUP. (*Id*. ¶¶ 11-12). The Notice of Revocation of Release contained boilerplate language stating that Petitioner's "release has been revoked pursuant to 8 C.F.R. § 241.4(1)." (*See* Exhibit E). It further states that "ICE has the ability and means to effectuate [Petitioner's] removal" and that Petitioner's case was "under review for removal to an alternate country." (*Id*.) He is currently in custody at the Adelanto Detention Facility. (*See* Exhibit F). Petitioner contends, among other things, that his detention without adequate notice by ICE is unlawful and punitive, in violation of his due process rights. (Application at 11).

**B.    Procedural Background**

On February 25, 2026, Petitioner Ilya Petrovich Gutnik ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition," Dkt. No. 1) and an Ex Parte Application for Temporary Restraining Order. (*See* First Application, Dkt. No. 3). The Court denied the First Application because the Petitioner's counsel declaration failed to establish the truthfulness of its contents, and the exhibits were attached to a defective declaration. (*See* Order, Dkt. No. 7). On February 26, 2026, Petitioner filed this instant Application (*See* Dkt. No. 9) andRespondents filed an Opposition on March 2, 2026. (Opposition, Dkt. No. 12).

**II.    LEGAL STANDARD**

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four Winter factors (the "*Winter* Factors"), which also guide the evaluation of a request

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical"). If the Court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. L.R. 65-1.

Because the issuance of a TRO or preliminary injunction is an extraordinary remedy, a petitioner requesting such relief bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO." *Gazazyan v. Bondi*, 2025 WL 3898484, at *3 (C.D. Cal. Nov. 7, 2025); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (*quoting* 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2949 (2011)).

### III. DISCUSSION

#### A. Likelihood of Success

The Court finds that Petitioner has demonstrated a likelihood of success on his claim that the government did not comply with the process laid out in Section 241.4(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Section 241.4(1) governs the detention of noncitizens under a final order of removal unless the government has made the specific determination that there is no significant likelihood of removal in the reasonably foreseeable future, in which case Section 241.13 governs. 8 C.F.R. § 241.13(b)(1). Both sections allow release to be revoked when a noncitizen violates the conditions of their release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1). Section 241.4(l) also allows revocation "in the exercise of discretion when, in the opinion of the revoking official" certain other conditions are met, and Section 241.13(i) also permits revocation "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id*. §§ 241.4(l)(2), 241.13(i)(2).

"[U]pon revocation" of an OSUP, a noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after [re-detention] to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l); *See also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) ("[I]n order to revoke conditional release, the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview ... to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification.'") (*quoting* 8 C.F.R. § 241.4(1)). ICE did not comply with either provision of this regulation.

First, ICE never notified Petitioner of the reasons for the revocation of his release. The "Notice of Revocation of Release" only states that Petitioner's "release has been revoked pursuant to 8 C.F.R. § 241.4(l)."[1] (*See* Exhibit E). The decision was made

---

[1] Petitioner was released in 2008. The Opposition argues that Petitioner cannot show that "no significant likelihood of removal in the reasonably foreseeable future." (Opposition at 3), But in *Zadvydas v. Davis*, the Supreme Court held that a noncitizen may be detained only for a period "reasonably necessary" to bring about their removal from the United States—presumptively six months.

because "it is appropriate to enforce the removal order entered against [Petitioner] as ICE has the ability and means to effectuate [his] removal." *Id*. It further states that "[o]n June 05, 2008, [Petitioner was] ordered removed to Ukraine, but [he was] granted withholding of removal to Ukraine. [His] case is under review for removal to an alternate country." *Id*. Respondents argue that "[t]he foregoing process is sufficient under the relevant regulations and the U.S. Constitution—and no more process is due to him." (Opposition at 5). But courts in this district and across the country have held that such vague, boilerplate statements are insufficient notice. *Esmail v. Noem, 2:25-cv-08325-WLH-RAO*, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025) (finding boilerplate language to be insufficient notice); *Bui v. Warden of Otay Mesa Detention Facility*, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (similar); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025) (similar).

This Notice of Revocation of Release contains no factual allegations specific to Petitioner or concrete reasons for revocation. The government's failure to provide Petitioner a meaningful notice of revocation is a violation of 241.4(l)(1). Many courts—including this one—have unequivocally found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release. *See Delkash v. Noem*, 2025 WL 2683988, at *5–6 (C.D. Cal. Aug. 28, 2025); *Ceesay v. Kurzdorfer*, 2025 WL 1284720, at *21 (W.D.N.Y. May 2, 2025) ("[B]ecause ICE did not

---

533 U.S. 678, 689, 701 (2001). Afterward, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release them. *Id*. at 701. Because Petitioner was released over 17 years ago, the government likely determined that there was no significant likelihood that Petitioner would be removed in the reasonable future and therefore, Section 241.13 likely governs his release. Nevertheless, because the Notice of Revocation of Release states that Petitioner was revoked pursuant to 8 C.F.R. § 241.4(l), the Court analyzes his revocation under that section.

follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release."); *Liu v. Carter*, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[B]ecause officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to release."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017) (holding that ICE's failures to follow the release revocation procedures in 8 C.F.R. § 241.4 rendered the petitioner's detention unlawful); *Chuny Touch v. Kristi Noem, Sec'y of the Dep't of Homeland Sec., et al.*, 2025 WL 3296280 (S.D. Cal. Nov. 26, 2025) ("ICE's failure to comply with 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights."); *see also Diaz v. Wofford, 2025 WL 2581575*, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."). "These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 2025 WL 2683988 at *6. "Rules matter. Hearings matter." *Id*. at *1. Respondents utterly ignore this long string of cases granting injunctive relief when ICE fails to follow its own release revocation procedures.

    Second, Respondents cite two cases, *Ton v. Noem*, 2025 WL 2995068 (C.D. Cal. Sept. 3, 2025) and *Sanchez v. Bondi*, No. 25-cv-02530-AB, 2025 WL 3190816, 2025 U.S. Dist. LEXIS 196639 (C.D. Cal. Oct. 3, 2025), to support their position that Petitioner's requested relief should be denied. Neither case actually helps Respondents, and, worse, the citation to *Sanchez* is misleading. Unlike in *Ton*, where the petitioner provided "no procedural information" and "no evidence that he cannot be removed to China," *Ton*, 2025 WL 2995068, at *3, Petitioner here provides ample evidence for the Court to review. Respondents also completely ignore the fact that Judge Birotte later reversed himself in *Sanchez*, after receiving additional and complete briefing in connection with Sanchez's subsequent request for injunctive relief. *Morales Sanchez,*

2025 WL 3651899, at *3.  Judge Birotte reasoned that:

> Petitioner has substantially supplemented his prior TRO arguments providing new authority and emphasizing regulatory requirements that were not previously cited. In particular, Petitioner relies on several district court decisions recognizing that ICE's regulatory obligations under 8 C.F.R. § 241.13(i) are enforceable and binding.  *See, e.g., Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 1000 (N.D. Cal. 2018); *Delkash v. Noem*, 2025 WL 2683988 (C.D. Cal. Aug. 28, 2025); *Esmail v. Noem*, 2025 WL 3030589 (C.D. Cal. Sept. 26, 2025); *Constantinovici v. Bondi*, ⸺ F.Supp.3d ⸺, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025); *Medina v. Noem*, 794 F.Supp.3d 365 (D. Md. 2025).
>
> The Court finds *Esmail* and *Delkash* particularly persuasive.  *Esmail*, 2025 WL 3030589; *Delkash*, 2025 WL 2683988.  Both cases were decided within the last four months out of this district on materially similar facts and concluded that ICE must adhere to the procedural safeguards imposed by the regulations. See Esmail, 2025 WL 3030589, at *1–4; Delkash, 2025 WL 2683988, at *1–3, *4. Petitioner also emphasizes that regulatory obligations, rather than the Immigration and Nationality Act ("INA") alone, govern the procedures for revocation of supervised release and notice to noncitizens.

*Id*.

Therefore, Petitioner has established a likelihood of success on the merits.

**B. Irreparable Harm**

Respondents argue that "Petitioner has not demonstrated that he will suffer irreparable injury absent his release by TRO." (Opposition at 11).  The Court disagrees and concludes that ICE's failure to follow its own regulations resulted in irreparable harm.  Government agencies are required to follow their own regulations.  *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (citation and quotation marks omitted).  Section 241.4 was "intended to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *McSweeney v. Warden of Otay Mesa Det. Facility*, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) (internal citation and quotation marks

omitted). ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice and the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm.").

### C. <u>Public Interest and Balance of the Equities</u>

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. While "public interest in enforcement of the United States's immigration laws is significant," (Opposition at 11), "it is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice.").

Here, there is a public interest in "upholding procedural protections against unlawful detention." *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *7 (N.D. Cal. July 24, 2025) (citation omitted). Without these procedures, the government cannot guarantee a fair process. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct.").

Accordingly, the Court **GRANTS** Petitioner's Application. The Court **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from detention;

**CIVIL MINUTES - GENERAL**

2. Respondents are also **ORDERED** to place Petitioner on supervision under the same conditions before his re-detention. Respondents must file a declaration by March 6, 2026, confirming Petitioner has been released from custody;

3. Respondents are **ENJOINED** from detaining Petitioner, or placing any significant restriction on his liberty such as electronic monitoring, unless they provide him with a pre-detention hearing before a neutral decisionmaker;

4. Petitioner is not required to secure a bond, as the government has provided no evidence of costs it will incur in releasing Petitioner. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("[A court] may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [their] conduct.");

5. Respondents are **ENJOINED** from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

6. Respondents are **ORDERED** to show cause in writing no later than five (5) days from the date of this Order why the Court should not issue a preliminary injunction. Petitioner may file a Reply no later than seven (7) days from the date of this Order;

7. A hearing on whether a preliminary injunction should be issued is set for March 13, 2026, at 1:30 p.m.; and

8. The Parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order on or before March 10, 2026. The joint status report shall also address whether the habeas petition is moot.

**IT IS SO ORDERED.**